On the Merits.
This is an action to correct errors in titles and to establish boundaries. The property involved is situated in the parish of Tangipahoa, in section 59, township 3 south, range 7 east, and section 41, township 3 south, range 8 east, known as the “Cullen Sanders headright.” The headright was supposed to contain 640 acres, but in reality contained slightly more than that acreage.
Cullen Sanders, the original grantee, sold this tract to different persons, the first, containing 150 acres, to Benhadad Mixon, on *237 December 18, 1819; tbe second, containing 440 acres, to John O. Terry, January 27, 1837; and, tbe third, containing 50 acres, to Philip Gracio, October 4, 1839.
By mesne conveyance .from Benhadad Mixon, Leslie Bankston became the owner in 1882 of- the 150 acres comprised within the first sale.
Plaintiffs ,are the children and forced heirs of said Leslie Bankston and his wife, Talitha Magee Bankston, and as such became the owners, in indivisión, of the property upon the deaths of their father and mother.
The 'tract of 440 acres comprised within the second sale by Cullen Sanders to John O. Terry, became the property of William Spring-in 1844, and 320 acres of the same tract by mesne conveyance from William Spring become the property of Henry F. Spring in 1873. The remainder of the tract, together with 84 acres sold by Henry F. Spring out of the said acreage acquired by him, was subdivided, and one portion became the property of the heirs of Timothy Jenkins and Luvenia Jenkins, his wife, and the other portion became the property of Thomas E. Tycer.
Henry F. Spring remained the owner of the 320 acres, less the 84 acres sold by him, from 1873 until 1902, when John E. Gill became its owner.
By mesne conveyance from Philip Gracio the 50 acres comprised within the third sale by Cullen Sanders became the property of Jacob McDaniel. >
The present suit was instituted by plaintiffs against John Ellis Gill, Thomas E. Tycer, Jacob McDaniel, and the administrator and heirs of Timothy and Luvenia Jenkins, to correct alleged errors in their respective titles, and for the purpose of establishing the proper boundaries between the three original tracts sold by Cullen Sanders.
John Ellis Gill, by way of exceptions, pleaded estoppel, res judicata, and no cause and no right of action.
Thomas E. Tycer filed numerous exceptions, among them being one pleading the prescription of 30 years.
Jacob McDaniel and the administrator and the heirs of Timothy and Luvenia Jenkins answered, denying the material allegations of the petition, and specially pleaded the prescription of 1, 3, 5, 10, 20, and 30 years, based upon open, notorious, continuous, and peaceful possession as owners of their respective properties for those periods of time.
The exceptions of defendants Gill and Tycer having been overruled, defendant Tycer reserving the benefit thereof, answered, denying the material allegations of the petition, and setting up, as had his codefendants, the prescription of 1, 3, 5,10, 20, and 30 years.
Defendant Gill, also without waiving the benefit of his exceptions, answered, averring that the Court of Appeals having decided every question between the parties, except the running of -the boundary, which was to be run according to the title deeds, no other question is at issue, and that the petition with all of its irrelevant issues is only intended to confuse, and should therefore be stricken out.
The lower court rendered judgment dismissing plaintiffs’ suit, at their costs, in so far as it relates to the correction of titles of all of the defendants and the correction of plaintiffs’ own title, and sustaining the pleas of the various defendants; decreeing Jacob McDaniel to be the owner and possessor of the property as described in the judgment; decreeing the heirs of Timothy and Luvenia Jenkins to be the owners and possessors of the property as described in the judgment; and decreeing, further, that the boundary line between the plaintiffs’ property and the property of defendant John Ellis Gill be run according to the title deeds.
From this judgment plaintiffs prosecute this appeal.
It is undisputed that the three sales made *239 by Cullen Sanders divested, him of the ownership of the entire tract.'
The sale to Mixon, under which plaintiffs claim title, was the first sale by the grantee out of his grant, and therefore requires that the’ area called for therein be satisfied by preference and priority over all others. The real issue in this case is to determine the boundaries of the land called for in this first deed.
The description of the property in the deed to Mixon is somewhat vague and uncertain, the sale being merely of “150 acres of land adjoining Thomas Addison’s.
However, when this property was sold to Gasibi Morgan in the succession of Prescilla Richardson, who had acquired it from Mixon on August 27, 1831, the deed described the land as follows:
“The following tract of land as the property of the late Prescilla Richardson, of said parish, deceased, containing one hundred and fifty acres, more or less, situated, lying and being in the "parish aforesaid on Big creek, whereon decedent resided, bounded on the south" by Cullen Sanders, on the north by Thomas Addison, on the other sides by public lands.”
At the time of this sale, Cullen Sanders was the owner of the remainder of the tract, the sale to Terry not taking place until January, 1837, and the sale to Graeio not taking place until October, 1839. It will also be noted that Cullen Sanders signed the act as a witness.
The description of thé property in the sale to Casibi Morgan is plain and definite. The deed states the boundaries to be, “on the north” by the Addison headright; on thfe south by the land's of Cullen Sanders and “on the other side by public lands.” Under this description the 150 acres referred to were clearly in the northern portion of the Cullen Sanders headright (sections 41 and 59), and reached clear across said headright from the public lands on the west to the public lands on the east.
The next deed in the record in which the land is mentioned1 is the sale from Hubert McDaniel 'and wife to G. W. Dyson, February 9, 1856.
The failure to produce the intervening titles is explained to be due to the break in the chain caused by the careless manner in which transcripts of titles were made from Washington párish, in which the property was originally situated, when the parish of Tangipahoa was formed out of that and other parishes, and the inability to examine the original records which were destroyed by fire in 1898.
In the sale by McDaniel and wife to Dyson, the description reads:
“A certain tract or parcel of land situated in Washington parish and on the waters of Big creek, bounded north by lands of W. B. Addison, south by lands of William Spring, east by lands of Jesse Sanders and west by public lands, containing one hundred and fifty acres of land,” etc.
By act dated June 13, 1882, G. W. Dyson sold this property to Leslie Bankston, the father of plaintiffs.
The land, in >this deed, is described as:
“A certain tract or parcel of land lying, on the waters of Big creek, containing one hundred and fifty acres and bounded on north by Thomas Addison headright, on the east by the lands of Jesse Sanders, on the south by lands formerly of Wm. Spring and on the west by public lands in section —, T. 3 S., R. 8 E.”,
In both of these sales, McDaniel to Dyson and Dyson to Bankston, the northern boundary of the tract is given as the Addison headrighf, the southern boundary as lands formerly of Wm. Spring, the eastern boundary, the land of Jesse Sanders (which is in the adjoining headright, the Ligón head-right), and the western boundary is the public lands in the headright adjoining on the west. The lands of William Spring referred to as the southern boundary, were a portion of the tract originally sold by Cullen Sanders to John O. Terry. The reference in the deed *241 by Dyson to Bankston of the T. 3 S., R. 8 E., is admittedly an error, as shown by the boundaries set forth in the deed itself.
The boundaries given in these sales agree with the boundaries in the deed to Oasibi Morgan, and leave no room for doubting that the property originally acquired by Mixon, and through him by Bankston and his heirs, stretched clear across the extreme northern portion of the headright, from east to west
The boundary lines of the three tracts at the time Sanders divested himself of his ownership in the entire tract, therefore, stood as follows: .

The area depicted on the foregoing diagram is substantially the same as found by T. E. Tycer, parish surveyor, for the Bankston property. This survey was made by Tycer on May 25,1914, at the request of J. E-Gill, as testified to hy said' Tycer in the case No. 4105, Bankston v. Gill, and which testimony was offered and filed in the present suit. The difference being, as shown by Mr. Tycer in his testimony, that he ran his lin,e a little wider on the west side in order to save the improvements of Mr. Bankston.
The area is also agreed to by C. M. Moore, who was appointed by the court in the present ease to survey the property and fix the boundaries, as will appear from his testimony on cross-examination, as follows:
“Q. Under that general description, 150 acres, with the headright lines running absolutely straight, would you not run a diagonal line clear through?
“A. Not knowing any old lines, information there, why I would _ naturally make the lines the same width all the .way through.
~“Q. In other words, you would make it practically as Tycer made it?
“A. Yes, sir.
“Q. In other words, you would run it the same width east and west clear across the head-right?
“A. Yes, sir.”
It is to be noted that the survey of Moore and the plan made in accordance thereto are not in accordance with the titles of the property, but were made in accordance with old lines and marks of the Garahy survey, which the Court of Appeals, in the suit of Bankston v. Gijl, has held to be incorrect.
The survey and plan of Moore showing the existing conditions clearly demonstrates that, with the exception of a strip of land in the extreme northern part of the headright, extending southeastward, narrowing to a point at the extreme eastward limits of the grant, containing 13.65 acres, that part of the, original 150 acres sold by Cullen Sanders to Benhadad Mixon lying on the east side of Big creek is now occupied by Jacob McDaniel and by the heirs of Timothy, and Luvenia Jenkins, who, however, having been in open, continuous, peaceful, and notorious posses-, sion thereof as owners for more than 30 years, as found by the trial judge, with which finding we agree, were confirmed therein by the judgment of the lower court.
This leaves as the property of the plaintiffs, of the original tract acquired by Mixon from Cullen Sanders, the 13.65 acres in the strip of land on the east side of Big creek, as shown on the plan and survey of C. M. Moore, *243 filed in evidence herein, and so much of said original tract of 150 acres as lies on the west side of Big creék and is embraced within the line run by Thomas E. Tycer, as shown by his testimony, filed in this case.
 In accordance with these views, the judgment appealed from.is correct, but, in the interest of clearness, and in order to settle the present controversy, should be amended by inserting in the third line of the last decretal paragraph after the words, “title deeds” the words “in accordance with the views herein expressed.”
It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by inserting in the third line of the last decretal paragraph thereof, after the words “title deeds,” the words “in accordance with the views herein expressed,” with full reservation to the plaintiffs of any and all rights concerning any improvements owned by them and which may be found to be upon any land belonging to defendant J. E. Gill, the question of said improvements to be hereafter disposed of and dealt with as provided by law; and, as thus amended, the judgment herein appealed from is affirmed. Costs of appeal to be borne by appellants.